**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CLASSIC BUSINESS CORPORATION, ) <br> TAMON CORPORATION and ) <br> VANDAN, LLC ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> EQUILON ENTERPRISES, LLC, ) <br> d/b/a Shell Oil Products, US, ) <br>   ) <br> Defendant. ) | Case No.: 1:09-cv-07735 <br><br> The Honorable John F. Grady <br><br> Magistrate Judge Geraldine Soat Brown |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

This Memorandum is submitted in support of the Motion to Dismiss filed by Defendant Equilon Enterprises LLC d/b/a Shell Oil Products US ("Equilon").

**INTRODUCTION**

At first glance, Plaintiffs appear to allege a number of facts in support of their claims that Equilon charged unfair and discriminatory prices for motor fuel. Upon closer look, however, it becomes apparent that Plaintiffs fail to plead the essential facts in support of their various legal claims. For example, Plaintiffs do not identify the time period of Equilon's alleged wrongful pricing practices or any specific purchaser of motor fuel who received a more favorable price and competed with Plaintiff. Without these and other essential factual allegations, Plaintiffs fail to allege sufficient facts that, if taken as true, state a claim to relief that is plausible on its face. Therefore, the Complaint should be dismissed.

**FACTUAL BACKGROUND**

Defendant Equilon is an integrated-refiner that markets motor fuel under the "Shell" brand. (Compl. ¶ 26.) Equilon markets Shell-branded motor fuel in the Chicago area through several types of stations (sometimes referred to as "classes of trade" in the industry) including

open dealer stations, lessee-dealer stations, multi-site operator ("MSO") stations, and stations supplied by distributors or jobbers. (Compl. ¶¶ 7, 8, 27, 35.) See also Shell Oil Co. v. HRN, Inc., 144 S.W.3d 429, 431 (Tex. 2004) (describing various classes of trade in the industry). Equilon may also sell unbranded motor fuel to retailers in the Chicago area. (Compl. ¶ 27.)

Plaintiffs own and operate three Shell-branded motor fuel stations in the Chicagoland area (i.e., they are "open-dealers"). (Compl. ¶¶ 9-11.) Plaintiffs' retail customers generally come from a 15-mile radius around their respective stations. (Compl. ¶ 12.) Each Plaintiff has entered into a Retail Sales Agreement ("RSA") with Defendant Equilon. (Compl. Exs. 1, 2 and 3.) Under the RSAs, Equilon agrees to sell and Plaintiffs agree to buy gasoline for re-sale at the Plaintiffs' stations under the "Shell" brand. (Compl. Exs. 1, 2 and 3.) The Plaintiffs agree to pay Equilon "the price in effect at the time loading commences at the Plant for the place of delivery." (Compl. Ex. 1 at 4, Ex. 2 at 4, Ex. 3 at 4.) This price is commonly-referred to as the "Dealer-Tankwagon Price" or "DTW." (Compl. ¶ 25.) In the industry, the "Plant" is a distribution facility and is sometimes referred to as a "Rack." (Compl. ¶ 26.)

Equilon delivers motor fuel directly to open-dealer and lessee-dealer stations. (Compl. ¶ 8.) Plaintiffs purchase motor fuel f.o.b. destination (i.e., the retail station). (Compl. Ex. 1 at ¶ 11(a), Ex. 2 at ¶ 11(a), Ex. 3 at ¶ 11(a).) In contrast, jobbers typically take delivery of the motor fuel at the "Rack" and distribute the fuel to various stations using their own trucks or common carriers. (Compl. ¶¶ 22, 27.) Jobbers purchase motor fuel at the "Rack Price." (Compl. ¶ 25.) Unbranded purchasers also purchase "from [Equilon]'s rack." (Compl. ¶ 27.) MSO (multi-site operator) stations are a type of "commission-operated retail outlet[]." (Compl. ¶ 35.) The MSO operator does not buy or sell motor fuel; rather, Equilon maintains ownership of the fuel and sets retail prices. See RWJ Companies, Inc. v. Equilon Enterprises LLC, 2005 U.S. Dist. LEXIS 38329, at *6-7 (S.D. Ind. Dec. 28, 2005).

Plaintiffs generally claim that Equilon charged different prices to different classes of trade, i.e., that it discriminated in price among the plaintiff open dealers, jobbers, other open-dealer stations, lessee-dealer stations, MSO stations, and unbranded purchasers. (Compl. ¶¶ 30-32.) However, Plaintiffs do not identify any specific Equilon customer who competes with the plaintiffs and received more favorable pricing. Nor do they identify the time period during which this alleged discriminatory pricing took place. Finally, Plaintiffs do not identify the source of the motor fuel supplied to them or the alleged favored purchasers.

Plaintiffs also claim that Equilon has "unilaterally and arbitrarily" changed its methodology for setting DTW prices resulting in higher prices to the Plaintiffs. (Compl. ¶¶ 40, 43.) They claim that the discriminatory pricing and new DTW methodology were put in place as part of a plan to convert to an all-jobber marketplace in the Chicago area and to drive the plaintiffs out of business. (Compl. ¶¶ 46-47.) Plaintiffs claim that as a result of Equilon's unfair and discriminatory pricing practices, their sales volumes have decreased resulting in damage to their businesses. (Compl. ¶¶ 41-42, 51, 55.)

The Complaint asserts four causes of action: Count I – violations of the Robinson-Patman Act; Count II – breach of contract under Section 2-305 of the Illinois Commercial Code; Count III – violations of the Illinois Consumer Fraud Act; and Count IV – declaratory judgment. Plaintiffs fail to plead sufficient factual allegations in support of Counts I and II, and Counts III and IV fail as a matter of law. Therefore, the Court should dismiss the Complaint in its entirety.

## ARGUMENT

### I. Standard under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a

claim does not give fair notice of its grounds or if its factual allegations do not plausibly suggest that the plaintiff has a right to relief, dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate. Twombly, 550 U.S. at 555-56. A complaint that pleads facts that are merely consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 129 S. Ct. at 1949.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [his] favor." Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).[1] The Court need not, however, accept as true bare legal conclusions. Iqbal, 129 S. Ct. at 1949. Mere labels or formulaic recitation of the elements of a cause of action do not suffice to state a cause of action. Id. "When the requisite elements [of an antitrust claim] are lacking [] the costs of modern antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiff can construct a claim from the events related in the complaint." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert denied, 470 U.S. 1054.

## II. Count I Should be Dismissed Because Plaintiffs Fail to Adequately Plead a Claim for Price Discrimination under the Robinson-Patman Act.

In Count I, Plaintiffs assert claims under section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). Specifically, Plaintiffs allege that Equilon illegally discriminated in favor of unidentified "other customers". (Compl. ¶ 60.) These claims fail because they do not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949.

---

[1] On a Motion to Dismiss under Rule 12(b)(6), a court should primarily consider the allegations in the complaint. However, a court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) (approving district court's consideration of public court documents).

"In order to establish secondary-line price discrimination under section 2(a) [of the RPA], a plaintiff has the burden of establishing four facts: (1) that seller's sales were made in interstate commerce; (2) that the seller discriminated in price as between the two purchasers; (3) that the product or commodity sold to the competing purchasers was of the same grade and quality; and (4) that the price discrimination had a prohibited effect on competition. George Haug Co. v. Rolls Royce Motor Cars, 148 F.3d 136, 141 (2d Cir. 1998). In addition, in order to recover damages under Section 4 of the Clayton Act, a private plaintiff must "demonstrate that it suffered actual injury to its business or property as a result of the price discrimination." Id. Plaintiffs' factual allegations fail to establish that the sales at issue were made in interstate commerce, that Equilon discriminated in price between two purchasers, or that the alleged price discrimination had a prohibited effect on competition. Therefore, Count I should be dismissed.

### A. Plaintiffs do not plead sufficient facts to demonstrate that the sales at issue were made in interstate commerce.

The RPA has a stringent interstate commerce requirement. Gulf Oil Corp. v. Corp Paving Co., 419 U.s. 186, 195 (1974). Only the purchases involved in the alleged discrimination can be considered in determining whether "either or any" discriminatory sale is "in commerce." Mayer Paving and Asphalt Co. v. General Dynamics Corp., 486 F.2d 763, 769 (7th Cir. 1973). Thus, gasoline dealers asserting price discrimination claims under the RPA must make specific factual allegations that would allow the Court and the defendant to assess whether the dealers can meet the jurisdictional interstate commerce requirement. See Chawla v. Shell Oil Co., 75 F. Supp. 2d 626, 645-654 (S.D. Tex. 1999).

In Chawla, the court rejected allegations very similar to those made by Plaintiffs in this case as insufficient to plead a claim under the RPA. Id. The plaintiffs, 73 lessee-dealers who operated Shell-branded gasoline stations in Texas, alleged that Equilon and a sister corporation violated the RPA by selling gasoline to jobbers at lower "rack" prices while contemporaneously

selling gasoline of the same grade and quality to the plaintiff dealers at higher DTW prices. Id. at 631-32. None of the plaintiffs "identified the jobber or other Shell gasoline station with which that Plaintiff competes, which that Plaintiff contends receives discriminatory gasoline prices from Defendants." Id. at 646. Nor did any Plaintiff plead with specificity the source of the gasoline supplied to their stations or to the alleged favored competitors. Id. Ultimately, the court ordered the plaintiffs to re-plead their claims and specifically address several facts on a plaintiff-by-plaintiff basis including: (i) the name and location of the source of the gasoline sold to the particular plaintiff and, if known, the source of the gasoline sold to the allegedly favored competitor; and (ii) the identity and location of the particular retail stations that received the allegedly unlawful favorable price, the approximate price received, and the approximate time period of the allegedly unlawful favorable treatment. Id. at 654.

Similarly, in this case, the Complaint is devoid of any factual allegations in support of the "interstate commerce" element of an RPA claim. At most, Plaintiffs assert the pure legal conclusion that "[Equilon] sells its fuel to its dealers and other locations and the fuel is purchased from [Equilon] by the dealers in the course of interstate commerce." (Compl. ¶ 36.) Such legal conclusions are insufficient as a matter of law to support a claim for relief. Indiana Grocery Co., Inc. v. Super Valu Stores, Inc. d/b/a Cub Foods, 647 F. Supp. 254, 262 (S.D. Ind. 1986) (rejecting allegation that products were "sold in interstate commerce" as a bare legal conclusion and concluding that plaintiff did not sufficiently allege that Super Valu made sales across state lines).

Plaintiffs do not identify the time period during which the alleged discriminatory pricing took place. Nor do they identify any particular favored purchasers with whom they compete. Plaintiffs do not even identify the terminal or Plant from which motor fuel was delivered to their own stations, much less the originating source of that fuel. Absent these types of factual

allegations, it is impossible to determine whether any alleged discriminatory transactions were made in interstate commerce. Thus, Plaintiffs fail to demonstrate that it is "plausible" that they meet the jurisdictional interstate commerce element under the RPA.

### B. Plaintiffs cannot assert an RPA claim predicated on transfers to company stations.

It is unclear whether Plaintiffs intend to include MSO stations in their RPA claims, as the allegations in Count I only generically state that Equilon sold gasoline to "its other customers" at discriminatory prices. (Compl. ¶ 60.) To the extent Plaintiffs intend to assert such claims, they fail as a matter of law because plaintiffs do not allege – nor can they allege in good faith -- that Equilon sells motor fuel to MSO stations. The second element of an RPA claim requires proof that a supplier discriminated in price between the plaintiff and another purchaser. This requires a showing of two completed, comparable sales to two different purchasers. Texaco, Inc. v. Hasbrouck, 496 U.S. 543, 559 (1990). In the motor fuel industry, comparisons of retail prices charged by a defendant's company-owned stations and the wholesale prices charged to a plaintiff cannot support a claim for price discrimination. O'Byrne v. Cheker Oil Co., 727 F.2d 159, 164 (7th Cir. 1984).

Plaintiffs' allegations regarding the MSO stations are internally inconsistent. Plaintiffs first allege that these stations are "commission operated retail outlets", suggesting that there is no "sale" within the meaning of the RPA. (Compl. ¶ 35.) They subsequently assert that Equilon "sells" motor fuel to the MSO stations. (Compl. ¶ 36.) The MSO operator does not, in fact, buy or sell motor fuel; rather, Equilon maintains ownership of the fuel and sets retail prices. RWJ, 2005 U.S. Dist. LEXIS 38329, at *6-7.

Equilon does not sell motor fuel to the MSO stations. Therefore, the Court should dismiss Plaintiffs' RPA claims to the extent they assert price discrimination between Plaintiffs and the MSO stations.

1181889

7

### C. Plaintiffs do not sufficiently plead injury to competition.

Finally, Plaintiffs' RPA claims fail because they do not adequately plead facts showing the alleged price discrimination had a prohibited effect on competition. The RPA condemns price discrimination if it "create[s] a reasonable probability of substantial injury to competition." Falls City Industries, Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 434 (1983). In secondary line cases like this one, injury to competition requires proof that the price discrimination "injures the disfavored purchaser in its ability to compete with the favored purchaser." Hovenkamp, Antitrust Law, Second Ed., Vol. XIV ¶ 2333a (2006). "A hallmark of the requisite competitive injury [ ] is the diversion of sales or profits from a disfavored purchaser to a favored purchaser." Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, 177 (2006). Courts have also allowed an inference of competitive injury where a favored competitor receives a significant price reduction over a substantial period of time. Volvo Trucks, 546 U.S. at 177 (citing FTC v. Morton Salt Co., 334 U.S. 37, 49-51 (1948)). Absent actual competition between the favored and disfavored purchaser, however, an RPA plaintiff cannot establish the competitive injury required by the RPA. Volvo Trucks, 546 U.S. at 177.

A plaintiff asserting price discrimination between a defendant's competing purchasers must first allege the existence of a competitive relationship with the favored purchaser. In Chawla, the district court concluded that the plaintiffs' broad and sweeping allegations failed to adequately plead competitive injury in large part because the plaintiffs failed to identify the alleged favored purchasers with whom they competed. 75 F. Supp. 2d at 654-54. Thus, the court required the plaintiffs to identify the specific competitors who allegedly received the favored price, the approximate price the favored competitor received, the approximate time period of the alleged unlawful favorable treatment, the geographic area in which the Plaintiff competes with each alleged favored purchaser, and what or how competition may be injured by

the alleged illegal pricing practices. Id.; see also Self v. Equilon Enterprises LLC, 2005 U.S. Dist. LEXIS 17288, at *44-55 (E.D. Mo. Mar. 30, 2005) (ordering the plaintiff dealers to allege "the identity and location of each favored buyer, who is in competition with plaintiffs, the approximate price that the favored buyer received and the approximate time period of the alleged unlawful treatment.")

Similarly, in this case, Plaintiffs fail to identify any alleged favored competitors, do not identify the approximate price charged to either Plaintiffs or the unidentified favored competitors, and do not identify the time period of the alleged unlawful favorable treatment. Thus, the Complaint does not contain sufficient factual allegations as to the existence of a competitive relationship between Plaintiffs and the alleged favored purchasers.

Further, the Complaint lacks sufficient factual allegations describing what or how competition has or may have been injured as a result of the alleged price discrimination. Plaintiffs assert that their profits have diminished due to Equilon's conduct. (Compl. ¶ 62.) They also assert the bare legal conclusion that Equilon's discriminatory pricing practices "tend to, and in fact have, substantially lessened competition in the market in the resale of Shell fuel and have injured, destroyed and prevented competition." (Compl. ¶¶ 54, 61.) They do not, however, allege that Equilon's favorable pricing to competing stations has caused Plaintiffs to lose volume *to those stations*. Nor do Plaintiffs allege any facts in support of their legal conclusion that Equilon's discriminatory pricing tends to and has injured competition. Thus, Plaintiffs' allegations are insufficient to demonstrate competitive injury.

Plaintiffs' allegations are likewise insufficient to establish an inference of competitive injury (sometime called the Morton Salt inference) because they do not show that any favored competitors received a significant price reduction over a substantial period of time. Volvo Trucks, 546 U.S. at 177. Absent factual allegations identifying the alleged favored competitor,

the approximate price charged to that competitor and the time period of the alleged unlawful favorable treatment, it is impossible to determine whether Plaintiffs can plausibly state a claim under the RPA. Therefore, Count I should be dismissed.

### III. Count II Should be Dismissed Because Plaintiffs Fail to Adequately Plead A Claim For Breach of Contract Under § 2-305 of the Illinois Commercial Code.

Plaintiffs assert that Equilon failed to set prices for motor fuel in good faith as required under the open price term provision of the Illinois Commercial Code, 810 ILCS 5/2-305(2) ("Section 2-305(2)"). Section 2-305(2) generally imposes an obligation to set a price in "good faith." Shell Oil Co. v. HRN, Inc., 144 S.W.3d 429, 432 (Tex. 2004). Official Comment 3 to section 2-305 creates a safe harbor for "price in effect" contracts such as the RSAs at issue here:

> "[Section 2-305(2)], dealing with the situation where the price is to be fixed by one party rejects the uncommercial idea that an agreement that the seller may fix the price means that he may fix any price he may wish by the express qualification that the price so fixed must be fixed in good faith. Good faith includes observance of reasonable commercial standards of fair dealing in the trade if the party is a merchant. But in the normal case a 'posted price' or a future seller's or buyer's 'given price,' 'price in effect,' 'market price,' or the like satisfies the good faith requirement."

810 ILCS 5/20305, Official Comment 3.

The drafters of the UCC incorporated this posted-price safe harbor to prevent extensive litigation over whether a supplier's "price in effect" was ultimately a reasonable one. Wayman v. Amoco Oil Co., 923 F. Supp. 1322, 1347 (D. Kan. 1996). "The chief concern of the UCC Drafting Committee in adopting § 2-305(2) was to prevent *discriminatory* pricing--i.e., to prevent suppliers from charging two buyers with identical pricing provisions in their respective contracts different prices for arbitrary or discriminatory reasons." Id. at 1347. Thus, a seller's "price in effect" fits within the safe harbor and complies with the statute's good-faith requirement as long as it is commercially reasonable and nondiscriminatory. Casserlie v. Shell Oil Co., 902 N.E.2d 1, 4-6 (Ohio 2009); see also, Autry Petroleum Co. v. BP Products North America, Inc., 334 Fed. Appx. 982, 986 (11th Cir. 2009) ("[T]he majority of courts who have had

occasion to consider the 'normal case' good faith presumption have applied it where the price charged was within the range of commercially reasonable prices and was applied non-discriminatorily to similarly-situated purchasers."); HRN, 144 S.W.3d at 434 ("[T]he majority of decisions suggest that a commercially reasonable DTW price, that is, one within the range of DTW prices charged by other refiners in the market, is a good faith price under section 2.305 absent some evidence that the refiner used pricing to discriminate among its purchasers").

Plaintiffs claim in a conclusory fashion that they were charged a higher price than other jobbers, unbranded purchasers, dealers and MSO stations. (Compl. ¶ 70.) They also generally claim that Equilon "unilaterally and unreasonably" raised fuel prices in an effort to terminate certain dealerships. (Compl. ¶ 68.) These allegations, however, do not plausibly suggest that this is anything other than a "normal case" involving a "price in effect" contract.

### A. Plaintiffs do not allege price discrimination among similarly situated buyers.

In Wayman, the court rejected the plaintiffs' Section 2-305(2) claim because they did "not allege that they were treated differently than other *similarly situated* dealers." 923 F. Supp. at 1347. In this case, Plaintiffs' claims should likewise be rejected because they do not identify favored purchasers who are "similarly situated" to the Plaintiffs. Section 2-305(2) was intended to prevent discriminatory pricing only between "two buyers with identical pricing provisions in their respective contracts." Wayman, 923 F. Supp. at 1347.

Plaintiffs' generic claims that they were charged higher prices than some unnamed jobbers, unbranded purchasers, dealers or MSO operators cannot support a claim for discriminatory pricing. Plaintiffs nowhere allege that these unidentified purchasers have identical pricing provisions as the Plaintiffs. Claims of price discrimination between different classes of trade generally do not suffice to demonstrate price discrimination under Section 2-305 because different classes of trade purchase under different terms and conditions. Atlantic

Autocare, Inc. v. Shell Oil Products Company LLC, 605 F. Supp.2d 463, 472 (S.D.N.Y. 2009) (rejecting comparisons between plaintiff dealers and multi-site operators and jobbers because "evidence that different prices are available to different classes of trade is not evidence of bad faith."); Self, 2005 U.S. Dist. LEXIS 17288, at *26-27 (striking allegations comparing prices charged to the plaintiff dealers with prices charged to jobbers, joint ventures and purchasers of unbranded motor fuel under Section 2-305); Casserlie, 902 N.E.2d at 6-7 ("Jobbers and dealers are not [ ] similarly situated buyers.").

Even purchasers within the same class of trade (i.e., other dealers), may not be similarly situated because the RSA's price term is dependent on the "place of delivery" for the fuel purchased. (Compl. Ex. 1 at 4, Ex. 2 at 4, Ex. 3 at 4.) Thus, only dealers within each Plaintiff's market area would be similarly situated to a particular Plaintiff. Casserlie, 902 N.E.2d at 6-7 ("[T]he fact that Shell's DTW prices varied by PADs [price administration districts] does not itself demonstrate unreasonable or discriminatory pricing."); HRN, 144 S.W.2d at 437 ("The competitive circumstances of each Dealer in the same pricing zone may vary from station to station, and yet Shell must treat them all the same.").

In sum, Plaintiffs must allege facts that would support the conclusion that an identified favored purchaser was "similarly situated" including, at a minimum, the identity of the favored purchaser and the time period of the alleged discriminatory conduct. Because Plaintiffs failed to do so, they failed to state a claim for bad-faith pricing based on discriminatory pricing practices.

      **B.    Plaintiffs fail to adequately allege that Equilon set commercially unreasonable prices.**

Plaintiffs also fail to sufficiently allege facts that would state a plausible claim that Equilon charged commercially unreasonable DTW prices. Most of Plaintiffs' allegations on this point revolve around an alleged scheme by Equilon to use unreasonably high prices to "drive the Plaintiffs out of business so that [Equilon] can re-acquire the Plaintiffs' Facilities from the

Plaintiffs at greatly reduced prices and in turn re-sell these Facilities and the real property to a jobber/distributor at a significant profit." (Compl. ¶ 46.) Putting aside the plausibility of this theory, Plaintiffs' conclusory allegations that Equilon charged unreasonably high prices with a subjective intent to drive them out of business are insufficient to support a claim for breach of contract under Section 2-305(2).

Allegations of subjective "bad intent" standing alone are insufficient to sustain a claim for bad faith pricing under Section 2-305(2). Casserlie, 902 N.E.2d at 6 ("[A] subjective inquiry is not permitted when the posted-price safe harbor applies. . . . As long as a price is commercially reasonable, it qualifies as the 'normal case.'"); see also HRN, 144 S.W.3d at 434-436 and cases cited therein. As explained in HRN, to allow inquiry into the subjective intent of the seller would eviscerate the safe harbor created by Comment 3:

> Dealers do not contend that they are entitled to any particular price and do not disagree that Shell's DTW price is within the range charged by other refiners to their dealers. Thus, if these Dealers were charged the same DTW price by another refiner who did not have a similar plan to thin their ranks, presumably the price would pass muster under the Dealers' view of section 2.305. Premising a breach of contract claim solely on assumed subjective motives injects uncertainty into the law of contracts and undermines one of the UCC's primary goals – to promote certainty and predictability in commercial transactions.

144 S.W.3d at 435 (internal quotes omitted).

In this case, Plaintiffs nowhere allege that the DTW prices charged to them are outside the range of DTW prices charged by other refiners to their dealers in the Chicago area. In fact, the Complaint makes no reference whatsoever to DTW prices charged by other refiners. Instead, it focuses solely on Equilon's sales to other classes of trade (including jobbers, open dealers and MSO operators). (See e.g., Compl. ¶¶ 29-31, 35.) Indiscriminate price comparisons between Equilon's DTW price and prices available to other classes of trade such as branded and unbranded jobbers or company-owned stores are insufficient to support a claim under Section 2-305. HRN, 144 S.W.3d at 437-38.

Nor does the allegation that Equilon plans to move to a jobber-supplied market demonstrate a plausible claim under Section 2-305. Atlantic Autocare, 605 F. Supp. 2d at 471-72 (rejecting claim that refiner's desire to exit the dealer market was evidence of bad faith under Section 2-305). Finally, Plaintiffs' allegations that Equilon's DTW prices have caused them to become uncompetitive fail to support a claim for bad-faith pricing. Equilon is not required to sell gasoline at a price that is profitable for buyers. Casserlie, 902 N.E.2d at 6 ("A good faith price under section 2.305 is not synonymous with a fair market price or the lowest price available." (quoting HRN, 144 S.W.3d at 437)).

Plaintiffs fail to allege facts that would support a plausible claim that Equilon's DTW prices were commercially unreasonable. Therefore, Plaintiffs' Section 2-305 claims fail as a matter of law.

### IV. Count III Should Be Dismissed Because Price Discrimination Is Not Actionable Under the Illinois Consumer Fraud Act.

Price discrimination is not actionable under the Illinois Consumer Fraud Act ("CFA"). Am. Top English, Inc. v. Lexicon Mktg. (USA), Inc., 2004 U.S. Dist. LEXIS, at *16-17 (N.D. Ill. June 21, 2004) (citing Laughlin v. Evanston Hospital, 550 N.E.2d 986, 992-93 (Ill. 1990)). Plaintiffs identify only one practice by Equilon that they contend violates the CFA: discriminatory pricing. (Compl. ¶ 77.) Because Plaintiffs' only complaint in Count III is price discrimination, and price discrimination is not actionable under the CFA, Count III should dismissed.

### V. Count IV Should be Dismissed Because Plaintiffs Improperly Seek A Determination of Equilon's Obligations Under the Supply Agreements.

Plaintiffs' claim for declaratory judgment in Count IV fails as a matter of law because it seeks a declaration of Equilon's, not the plaintiffs', obligations under the RSAs. The

Declaratory Judgment Act[2] authorizes a court to "declare the rights and other legal relationships of any interested party . . . whether or not further relief is sought." 28 U.S.C. § 2201. Although a plaintiff may seek a declaratory judgment to determine its own obligations under a contract, the act is not an appropriate vehicle to clarify another party's obligations. Household Fin. Services, 1999 U.S. Dist. LEXIS 15039, at *7 (granting motion to dismiss where plaintiff sought declaration that defendant breached the parties' agreement); see also Asch v. Teller, Levit & Silvertrust, P.C., 2003 U.S. Dist. LEXIS 16747, at *20-21 (N.D. Ill. Sept. 26, 2003) (rejecting declaratory judgment count where plaintiff sought clarification of the defendant's duties rather than his own).

In this case, Count IV, taken as a whole, makes it is clear that Plaintiffs impermissibly seek declaratory relief as to Equilon's obligations under the RSAs. Plaintiffs nowhere describe their own obligations (or actions) under the RSAs. (Compl. ¶¶ 81-83.) Moreover, Plaintiffs request an award of actual damages in the WHEREFORE paragraph, suggesting that what Plaintiffs seek is a declaration that Equilon's pricing practices violate the RSAs. Plaintiffs' claims for declaratory judgment are nothing more than thinly-veiled breach of contract claims. Therefore, Count IV should be dismissed.

## CONCLUSION

For the foregoing reasons, Counts I through IV of the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

---

[2] Plaintiffs bring Count IV under the Illinois Declaratory Judgment Statute, 735 ILCS § 5/2-701. That statute is inapplicable in federal courts. Household Fin. Services, Inc. v. Northern Trade Mortgage Corp., 1999 U.S. Dist. LEXIS 15039, at *4-5 (N.D. Ill. Sept. 27, 1999). Under well-settled practice, this Court should instead consider Plaintiffs' declaratory judgment claims under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

1181889     15

Dated: February 5, 2010                     Respectfully submitted,

                                            GREENSFELDER, HEMKER & GALE, P.C.

                                            /s/ Sandra B. Gallini
GREENSFELDER, HEMKER & GALE, P.C.           Sandra B. Gallini, #6279114
Kevin B. Duckworth, #6191668                sbg@greensfelder.com
kbd@greensfelder.com                        10 South Broadway, Suite 2000
200 West Madison, Suite 3440                St. Louis, Missouri  63102
Chicago, Illinois  60606                    (314) 241-9090
(312) 419-9090                              (314) 241-4245 (fax)
(312) 419-1930 (fax)

                                            *Attorneys for Defendant Equilon Enterprises*
                                            *LLC d/b/a Shell Oil Products US*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 5th day of February, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following party:

    John Conway, Esq.
    Sullivan Hincks & Conway
    120 West 22nd Street
    Suite 100
    Oak Brook, IL 60523

    *Attorneys for Plaintiffs*

                                            /s/ Sandra B. Gallini, Esq.